Filed 5/5/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| Estate of KIMBERLY JEAN KEMPTON, <br><br>    Deceased. | |
| PHILLIP CAMPBELL, <br><br>    Respondent, <br><br>      v. <br><br> CHARLES KINNEY, <br><br>    Appellant. | A164148 <br><br> (Alameda County Super. Ct. No. RP13686482) |

## I. INTRODUCTION

Charles Kinney, an adjudicated vexatious litigant and disbarred former attorney, obtained leave from our Administrative Presiding Justice to pursue an appeal from the final judgment in this probate proceeding. Leave was granted not because Kinney made the necessary threshold showing of merit and absence of intent to harass or delay under Code of Civil Procedure section 391.7, but because the vexatious litigant statute has no application to a party who files an appeal in a proceeding he did not initiate. (*John v. Superior Court* (2016) 63 Cal.4th 91, 99.)

Kinney appeals the probate court's "Order Settling First and Final Account and Directing Final Distribution; [and] Allowing Statutory and

1

Extraordinary Fees[]" (the Final Distribution and Allowance of Fees Order).
Although Kinney's arguments on appeal are difficult to distill in a coherent
way, he appears to claim, chiefly, that the probate court erred in approving
Special Administrator Phillip Campbell's (1) decision not to pay him his
$1,000 statutory fee, (2) cancellation of an agreement with Judith K., a prior
administrator of the estate, to manage and perform various  services relating
to a house in San Leandro owned by the estate, and (3) approval of a
distribution of $329,684.82 out of the sales proceeds of the San Leandro
house to satisfy indebtedness pursuant to certain judgment liens against that
property.

In support of this third claim of error, Kinney advances a hodgepodge of
arguments.  He contends, among other things, that all of the judgment liens
recognized as valid by the Special Administrator were "void"; that Clark and
her attorneys presented these judgments to Judith K. for payment as
creditors' claims against Kempton's estate; that Judith K. found Clark's
creditors' claims to be untimely or otherwise defective; that Clark and her
attorneys failed to initiate timely litigation to challenge Judith K.'s refusal to
pay her creditors' claims; and that, even if any of the underlying judgments
were not "void," it was error to recognize any of them as valid debts of the
estate because they were not properly proved up.

We will affirm.  On all but one of the issues Kinney presents, he either
has no standing to appeal or is barred under the doctrine of claim preclusion,
and on the one remaining claim of error, we conclude that the probate court
acted within its discretion.

2

## II. BACKGROUND

### A. *The Probate Proceedings in This Case*

Before being disbarred, Kinney served briefly as the attorney for Judith K., who was appointed in 2013 to administer the will of her late daughter, Kimberly Kempton. Judith K. and her husband Ron were the only devisees under the will. Kempton, an attorney, had been an active participant in the unethical conduct that led to Kinney's disbarment, and was herself facing recommended disbarment by State Bar disciplinary authorities along with Kinney at the time she died. The disciplinary proceedings arose out of a series of baseless lawsuits by Kinney and Kempton. Those lawsuits eventually resulted in judgments against the two of them for hundreds of thousands of dollars in attorney fees, costs, and sanctions.

This probate proceeding appears to have become an instrument for the evasion of that judgment indebtedness. After more than five years of delay in winding up the affairs of the Kempton estate, the probate court sua sponte issued an order directing Judith K. to file an inventory and appraisal of the estate's assets (Prob. Code, § 9613, subd. (a)) and to show cause why she should not be removed from office (Prob. Code, § 8500). Shortly thereafter, the court removed her as administrator and appointed Phillip Campbell as Special Administrator. To rectify the situation he found, the Special Administrator performed a forensic examination of the accounts of the estate, marshalled and secured its assets, and prepared an accounting of the estate's assets and debts.

In February 2021, the Special Administrator filed a final report and petition for approval of his final accounting and proposed distribution of assets pursuant to that accounting (the Final Report). The Final Report showed that, while Judith K. was serving as Administrator, the estate had

3

paid Kinney $13,756.50 in legal fees as well as $6,970 under a November 2017 agreement calling upon him to perform certain property management and other services in connection with a house in San Leandro. The San Leandro house, one of two real estate properties owned by Kempton at her death, was a principal asset of the estate.[1]

The Special Administrator was "unable to find any services provided by [Kinney] that benefitted the estate." He affirmatively found that various filings by C. Brent Patten, Kinney's successor as counsel to Judith K.,[2] "were not a benefit to the estate, and in fact were a waste of the estate." And he further found that an accounting filed by Judith K. in response to an order to show cause "did not balance, [was] incomplete, . . . and generally showed a level of incompetence and disregard for the proper administration of the

---

[1] The November 2017 agreement obligated Kinney to perform "services to manage, repair and other matters" relating to the San Leandro house. The house was used by Kempton's estate as a rental property during Judith K.'s tenure as administrator. The agreement entitled Kinney to 10 percent of the rental income generated by the home.

[2] Patten died in 2019. He was appointed counsel to Judith K. in 2013, apparently on Kinney's recommendation. In his responding brief, the Special Administrator offers the opinion that Kinney ghostwrote pleadings Patten filed in this probate proceeding. That allegation, if true, may amount to practicing law without a license (Bus. & Prof. Code, § 6125), and for a disbarred attorney would be a felony offense punishable by imprisonment (*id.*, § 6126, subd. (b)). While we need not decide whether the allegation is true to resolve this appeal, we note that it is consistent with Kinney's demonstrated pattern of using third-party proxies for his campaign of litigation abuse, which continued after his disbarment. (*Kempton v. Clark* (Sept. 25, 2014, B248713) [nonpub. opn.] [2014 Cal.App.Unpub. LEXIS 6779 at pp. *13–*15].) On our own motion, we take judicial notice of this unpublished opinion. (Evid. Code, § 452, subds. (a), (d); Cal. Rules of Court, rule 8.1115(b)(1).)

estate." According to the Special Administrator, Patten failed to assist Judith K. in "properly complying" with the order to show cause.

Nonetheless, the Special Administrator recognized that Patten and Kinney were entitled to share in certain statutory fees for their service as counsel to Judith K. But his recommendations to the court kept those fees to a minimum. He recommended payment of $1,500 to Patten's estate, opining "[i]t would not be appropriate to compensate Mr. Patten for services that fell below the standard of care." For Kinney he recommended even less—$1,000—and decided to pay the fee to Michele Clark, a lienholder on one of the many judgments that have been entered against Kinney, instead of to Kinney himself.

The Special Administrator also made a request for approval of his own compensation, much of which he billed at discounted rates. This payment request included hours billed for extraordinary efforts made necessary by the complexity of the engagement. "Had Kinney not been involved" with Kempton's estate after her death, the Special Administrator explained in his Final Report, "I believe the probate estate could have been closed in 12–18 months. The majority of the issues that impacted [the] estate and the need for extra-ordinary time in its administration are the result of decedent's partnership with . . . Kinney, a vexatious litigant."

A brief perusal of the extensive record here shows why the Special Administrator offered this justification for having to spend an extraordinary number of hours on the case. After his withdrawal as counsel to Judith K., Kinney filed a request for special notice in the Kempton probate proceeding, claiming to be an interested party. That gave him the right to participate in the case as to all matters affecting his potential interest. According to the Special Administrator, Kinney proceeded to "object[] to every filing prepared

5

by the Special Administrator," which required a response "no matter how frivolous or impertinent."

**B.** ***History of Litigation Abuse by Kinney and Kempton***

No doubt due to the scattershot presentation of issues by Kinney, neither party gives us a cogent explanation of the wider context behind the events immediately at issue here. That context is illuminating. Read together with the record in this case, a sprawling campaign of litigation abuse by Kinney and Kempton over the course of more than a decade has been documented extensively in several published opinions. We refer here to (1) two Court of Appeal opinions, *In re Kinney* (2011) 201 Cal.App.4th 951 and *Kinney v. Clark* (2017) 12 Cal.App.5th 724; (2) the federal opinions in *Kinney v. Cooper* (C.D.Cal., Apr. 13, 2016, No. CV 15-9022 PSG (JCx)) 2016 U.S.Dist. LEXIS 203959, affd. (9th Cir. 2017) 708 Fed.Appx. 411; *Estate of Kempton v. Clark* (*In re Clark*) (Bankr.9th Cir. Nov. 4, 2014), No. CC-14-1134-DKiTa) 2014 Bankr. LEXIS 4633, affd. (9th Cir. 2016) 662 Fed.Appx. 544; and *In re Kinney* (9th Cir., Dec. 28, 2017, No. 17-80256) 2017 U.S.App. LEXIS 27040; and (4) the State Bar Disciplinary Court of Review opinion in *In the Matter of Kinney* (Review Dept. 2014) 5 Cal. State Bar Ct. Rptr. 360 [2014 Calif. Op. LEXIS 34].

1. *The Ferndale Cases*

Stated generally, the pertinent facts are as follows. Eighteen years ago, Clark had the misfortune of selling a home to Kinney and Kempton in the Silver Lake neighborhood of Los Angeles. (*Kinney v. Clark*, *supra*, 12 Cal.App.5th at p. 727.) What began as a dispute over a fence and some purported easements led to multiple lawsuits in Los Angeles County Superior Court by Kinney and Kempton against Clark, various Silver Lake neighbors,

and the City of Los Angeles (the Ferndale cases), and eventually to an avalanche of related, follow-on litigation in federal court.

Some of the Ferndale cases were brought by Kinney, and some by both Kinney and Kempton. (*Kinney v. Clark*, *supra*, 12 Cal.App.5th at pp. 727–728.) All of the lawsuits were baseless. (*In the Matter of Kinney*, *supra*, 2014 Calif. Op. LEXIS 34 at pp. *15–*16.) In 2008, upon entry of judgment in the first of the Ferndale cases, the Superior Court granted an award of contractual attorney fees and costs to Clark in the amount of $9,349.33. That was just the beginning. By 2020, judgments in favor of Clark for more than five hundred thousand dollars in additional contractual attorney fees and costs, as well as sanctions, had been entered against Kinney and Kempton (or her estate) in state and federal court.

There is no question Kinney was the ringleader in all of this. A Second District Court of Appeal panel observed in 2011 that "[w]ith Kinney at the helm, Kempton has pursued six lawsuits in Los Angeles Superior Court over the last five years. All of the lawsuits relate to real property owned by Kinney and Kempton (the K's), located on Fernwood Avenue in the Silver Lake neighborhood of Los Angeles . . . . The K's have continually—and resoundingly—lost their cases in the trial courts. As one trial judge aptly wrote in a statement of decision, Kinney is 'a relentless bully' who displays 'terrifying arrogance' by filing 'baseless litigation against the City and its citizens.' " (*In re Kinney*, *supra*, 201 Cal.App.4th at p. 953.)

2. *The Federal Litigation and the Vexatious Litigant Orders*

After suing unsuccessfully in state court, Kinney and Kempton filed a series of equally unmeritorious actions in federal court attempting to relitigate issues they previously lost in state court. As judgment after judgment in these cases went against them, the federal litigation snowballed

7

into a series of actions against Clark's attorneys[3] and various official actors who were involved with the litigation and the subsequent disciplinary proceedings, including the State Bar,[4] members of the Second District Court of Appeal panels that rejected the appeals in the Ferndale cases,[5] a federal district court judge,[6] and every member of the California Supreme Court who voted on denials of review in those cases.[7]

There were dozens of these satellite federal actions. (*In re Kinney*, *supra*, 2017 U.S.App. LEXIS 27040 at p. *2.) The federal proceedings included four unsuccessful petitions for certiorari to the United States Supreme Court. Like the Ferndale cases and the appeals that arose out of them, all of this collateral federal litigation was baseless. (*Kinney v. Cooper*, *supra*, 708 Fed.Appx. at p. 412.) Ultimately, Kinney and Kempton were declared vexatious litigants by the Los Angeles Superior Court, the Second District Court of Appeal, the Central District of California, and the Ninth Circuit Court of Appeals. Kinney and Kempton were jointly tried on disciplinary charges before the same State Bar hearing officer, but Kempton died in a motorcycle accident before the State Bar disciplinary proceedings

---

[3] E.g., *Kinney v. Chomsky* (C.D.Cal. Oct. 9, 2014, No. 14-5895 PSG (MRWx)) 2014 U.S.Dist. LEXIS 200207.

[4] E.g., *Kinney v. State Bar of California* (N.D.Cal., Aug. 29, 2016, No. 16-cv-02277-MMC) 2016 U.S.Dist. LEXIS 115857.

[5] E.g., *Kinney v. Lavin* (N.D.Cal., Oct. 31, 2014, No. C-14-3817 MMC) 2014 U.S.Dist. LEXIS 154870; *Kinney v. Cuéllar* (N.D.Cal., June 1, 2018, No. 18-cv-01041-EMC) 2018 U.S.Dist. LEXIS 92314.

[6] E.g., *Kinney v. Gutierrez* (C.D.Cal., Oct. 4, 2016, No. CV 16-6168 PSG) 2016 U.S.Dist. LEXIS 194305.

[7] E.g., *Kinney v. Cantil-Sakauye* (N.D.Cal., June 22, 2017, No. 17-cv-01607-DMR) 2017 U.S.Dist. LEXIS 96857; *Kinney v. Cuéllar, supra*, 2018 U.S.Dist. LEXIS 92314.

against her could be completed.  (*In the Matter of Kinney*, *supra*, 2014 Calif. Op. LEXIS 34 at p. *3, fn. 2.)  Kinney was disbarred.  (*Id*. at pp. *22–*25.

      3. *Clark's 2010 Bankruptcy, the Determination That Kinney Engaged in a Pattern of Using Kempton as a "Strawman" To Evade Vexatious Litigant Orders Against Him, the Conclusion of Clark's Bankruptcy Proceeding in 2014, and the Various Removal Proceedings*

Clark declared bankruptcy in 2010, largely because of the expense of defending litigation brought by Kinney and Kempton.  (*Kinney v. Clark*, *supra*, 12 Cal.App.5th at pp. 728–729.)  According to her attorneys, she filed for bankruptcy in an effort to use the automatic bankruptcy stay to shield herself from further lawsuits by Kinney and Kempton.  But Kinney and Kempton had other ideas.  They tried to turn her bankruptcy proceeding into another arena for the pursuit of frivolous litigation.

Kempton filed an adversary proceeding in the bankruptcy court seeking rescission of the contract under which attorney fees were awarded to Clark in the Ferndale cases.  (*Estate of Kempton v. Clark* (*In re Clark*), *supra*, 2014 Bankr. LEXIS 4633 at pp. *6–*7.)  Kempton's adversary proceeding was, in effect, an attempt to establish retrospectively that Clark had no rights to attorney fees recovery in the Ferndale cases because her petition for a bankruptcy discharge supposedly cut off those rights.  But that gambit failed when the bankruptcy court held the adversary proceeding in abeyance until state court proceedings in an offshoot of the Ferndale cases, a severed cross-suit called *Kempton v. Cooper*, were completed.  (*Estate of Kempton v. Clark* (*In re Clark*), at p. *6.)

By motion, Clark asked the bankruptcy court to deem abandoned any interest the bankruptcy trustee had in Clark's right to recover fees arising out of the Ferndale cases, and the motion was granted.  (*Kinney v. Clark*, *supra*, 12 Cal.App.5th at p. 729.)  In granting the abandonment motion, the

bankruptcy court rejected an attempt by Kinney and Kempton to have that court revisit the state law issue of whether Clark was entitled to contractual attorney fees in the Ferndale cases. (*Ibid*.) It ruled that all issues concerning recovery of attorney fees by Clark under the contract of sale with Kinney and Kempton were to be determined by the Superior Court in *Kempton v. Cooper*. (*Ibid*.)

Clark prevailed in *Kempton v. Cooper* and filed a motion for another attorney fee award. Her motion was granted, and in 2013 a judgment was entered awarding $167,678.50 in contractual fees and costs against Kempton just before her death (the 2013 *Kempton v. Cooper* Judgment). The order awarding this fee recovery answered the question the bankruptcy court explicitly left for decision as a matter of state law: the Superior Court once again confirmed—this time after Clark's bankruptcy discharge—that Clark was entitled to prevailing party attorney fees and costs against Kempton and Kinney under the contract of sale at issue in the Ferndale cases.

For Clark, there remained one wrinkle to iron out at that point. Because Kinney was not a party to *Kempton v. Cooper*, the Superior Court allowed recovery of fees solely against Kempton. Clark appealed, and an appellate panel held that, although Kinney was nominally a non-party to *Kempton v. Cooper*, he was a de facto plaintiff and had utilized Kempton as a " 'strawman.' " (*Kempton v. Clark*, *supra*, B248713 [2014 Cal.App.Unpub. LEXIS 6779 at pp. *15–*17].) As a result, he was ordered to be added as a codefendant judgment debtor jointly liable for the fee award against Kempton (*ibid*.), which made both Kinney and Kempton liable on the 2013 *Kempton v. Cooper* Judgment.

The bankruptcy court granted Clark a discharge of debts in 2012, but two years later, in 2014, following the decision for Clark in *Kempton v.*

*Cooper*—which was still pending when the discharge order was entered— reopened the bankruptcy proceedings for the sole purpose of dismissing the adversary proceeding Kempton had initiated. (*Estate of Kempton* (*In re Clark*), *supra*, 2014 Bankr. LEXIS 4633 at p. *13, affd. 662 Fed.Appx. 544.) Although that brought Clark's bankruptcy proceeding to conclusion, Kinney still would not accept defeat. He filed baseless appeals in the Ninth Circuit on multiple occasions, on multiple issues, and lost again—repeatedly. (*In re Kinney*, *supra*, 2017 U.S.App. LEXIS 27040 at pp.*1–*2 [listing 21 appeals].)[8]

Meanwhile, back in state court, before the 2013 *Kempton v. Cooper* Judgment became final, Kinney and Judith K. on multiple occasions attempted to remove the proceedings to the United States District Court for the Central District of California, and each time the federal district court remanded the proceeding back to Los Angeles County Superior Court. In two of the three attempts at removal, the federal district court awarded attorney fees as a sanction under title 28 United States Code section 1447(c) for the filing of an objectively baseless removal petition. The federal district court's first award, set forth in a judgment against Kinney in amount of $10,050, was entered June 10, 2016 (the 2016 Removal Sanctions Judgment).[9] The second award, set forth in a judgment against Judith K. in the amount of

---

[8] Judith K., in her capacity as administrator of the Kempton estate, participated in some of this frivolous litigation activity. She attempted to join in the pending state court appeal in *Kempton v. Clark* following Kempton's death, but was dismissed for lack of standing. (*Kinney v. Clark*, *supra*, 12 Cal.App.5th at p. 730.) She also filed her own unsuccessful Ninth Circuit appeal of the bankruptcy court's decision closing Clark's bankruptcy. (*Estate of Kempton v. Clark* (*In re Clark*), *supra*, 2014 Bankr. LEXIS 4633, affd. (9th Cir. 2016) 662 Fed.Appx. 544.)

[9] *Kinney v. Cooper*, *supra*, 2016 U.S.Dist. LEXIS 203959.

$83,885, was entered March 9, 2017 (the 2017 Removal Sanctions Judgment).[10]

### C. *Attempts by Clark and Her Attorneys To Collect Judgment Indebtedness Directly from the Kempton Estate and Then by Enforcement of Judgment Liens Against the San Leandro House*

Having outlined in broad strokes this astonishing history of litigation abuse by Kinney and Kempton (we have summarized only some of it), we turn our focus back to the probate proceeding before us. A series of fee awards in Superior Court and in the Court of Appeal followed the 2008 fee award in the first of the Ferndale cases, *Kinney v. Clark*, as Clark began to take steps to collect. Kinney and Kempton resisted at every turn. Clark's collection efforts, described in detail in the Second District's opinion in *Kinney v. Clark*, *supra*, 12 Cal.App.5th at pp. 730–731, continued in this proceeding.

Beginning in August 2013, Clark and her attorneys filed six creditors' claims seeking payment from the Kempton estate on fee awards arising out of the Ferndale cases. Judith K. did not act on these claims for two years, but in 2015 Patten, acting on her behalf, filed objections to three of them and outright rejections of three others. Rather than mount a challenge to Patten's refusal to recognize the validity of fee awards in the Ferndale cases by suing the Kempton estate (thus opening up another arena for relitigation of whether the underlying judgments were valid), Clark and her attorneys took two alternate routes to collection.

First, they argued that some of the judgments in the ongoing litigation campaign by Kinney and Judith K. after Kempton's death—specifically, the

---

[10] *In re Kinney*, *supra*, 2017 U.S.App. LEXIS 27040.

judgments arising out of federal litigation misconduct after Kempton died—were not debts of Kempton at the time of her death, and instead were payable as administrative claims against the estate. As such, they argued, these claims were not subject to the timing requirements for creditors' claims. Judith K. disagreed, and was facing a motion to compel her to recognize the federal judgments as valid debts of the estate when she was removed.

A second, alternate approach to collection ultimately proved to be more successful. Clark and her attorneys recorded judgment liens against the San Leandro house. Prior to Judith K.'s removal, there did not appear to be enough equity in the San Leandro house to fund a payoff of much of the judgment debt against Kempton, no matter how much of it was legitimately considered a debt of the estate. As of 2018, Patten's accounting statements for the Kempton estate reported a value for the San Leandro house of "around $500,000, with loans of about $435,000." Clark and her attorneys had recorded judgment liens showing standing judgment indebtedness of $540,000, far more than could be paid out of the reported $65,000 of equity in the house.

But it turned out that Patten had significantly undervalued the San Leandro house as an asset of the estate.[11] The Special Administrator's first status report to the court following his appointment in January 2019 informed the court that the San Leandro house had "an approximate value of $879,400 and a house note of $329,400," and thus equity of $550,000. The house was eventually sold by the Special Administrator in 2021 for $960,000.

_____

[11] In its order suspending Judith K. as personal representative of the Kempton estate, the probate court found that the values listed on an inventory and appraisal of assets in the estate in response to its order to show cause were "not reliable."

13

And when the sale took place, payments of $329,684.82 went to Clark and her attorneys out of escrow.

Still, however, the escrow payouts fell well short of the entire amount of the judgment liens recorded against the San Leandro house, after other debts of the estate were paid. As the Special Administrator points out in his responding brief, "[t]his was a bankrupt estate" with debts and pending judgment liens that "were greater than the market value of the estate's assets." It is typical, of course, that in a negotiated workout of indebtedness between an insolvent debtor and its creditors, only part of the total amount owing will be paid, and some forms of debt may be prioritized over other forms of debt. That appears to be what happened here.

The $329,684.82 in judgment lien payouts was an agreed upon amount negotiated between the Special Administrator and Clark's attorneys to cover most but not all of the indebtedness on the two largest outstanding judgments against the Kempton estate, the 2013 *Kempton v. Cooper* Judgment and the 2017 Removal Sanctions Judgment. The Special Administrator determined that six other creditors' claims for judgment liens totaling some $129,659 "were all timely rejected and as such are not liabilities of the estate." With accrued interest, the 2013 *Kempton v. Cooper* Judgment was fully paid in the amount of $295,617.35. And the 2017 Removal Sanctions Judgment was partially paid in the amount of $34,067.47, leaving $49,267.53 still outstanding, without accounting for accrued interest.

## III. DISCUSSION

### A.     *Issues Raised on Appeal and Parties' Contentions*

Kinney devotes much of his rambling 63 pages of briefing in this appeal to attacking as "void" various judgments recognized by the Special Administrator as valid debts of the Kempton estate.

14

Kinney argues it was error to allow any of the assets of the Kempton estate to be paid to satisfy judgments awarding attorney fees and costs to Clark or her attorneys. His primary theory (there are a number of variations on it) is that as a result of Clark's bankruptcy discharge, she had no obligation to pay anything to attorneys for the time they spent attempting to collect fee awards against Kempton, or him, or both of them, in the Ferndale cases.

The thrust of Kinney's "void" judgment arguments appears to be that any contract Clark had with her attorneys prior to her 2010 Chapter 7 bankruptcy filing was not affirmed by the bankruptcy trustee and that any claim to payment from her on such a contract was an undisclosed, pre-petition debt. According to Kinney, it would violate federal bankruptcy law and intrude on exclusive bankruptcy jurisdiction to recognize as valid any judgments resting on such a claim.

Without detailing every one of the other issues Kinney raises, framed in exactly the terms he argues (much of which is difficult to follow), he also complains generally that, on Judith K.'s behalf, Patten rejected attempts by Clark and her attorneys to present "void" judgments in the form of creditors' claims payable directly by the Kempton estate, and that Clark and her attorneys failed to initiate timely litigation against the estate to collect on the judgments after Judith K. refused to recognize them as valid.[12]

_____

[12] The opening brief summarizes the arguments advanced in support of the appeal as follows: The Special Administrator "improperly (1) reduced Kinney's statutory attorney fee to $0; (2) rejected Kinney's handyman claim for amounts owed and cancelled his written contract with Judith [K.] as a handyman for [Kempton's] San Leandro property; (3) paid Clark and her attorneys Marcus about $330,000 on rejected [and void] probate claims, [void] liens, and/or [void] abstracts of judgment; (4) failed to get lien and other

15

**B.** ***Claims of Error Kinney Either Has No Standing To Raise or Is Foreclosed from Raising***

Arguments from Kinney and his proxies that the judgment indebtedness against him and Kempton is "void" have been rejected by courts on many previous occasions. (*Kinney v. Clark*, *supra*, 12 Cal.App.5th at p. 735 ["We note Kinney repeatedly has argued in the bankruptcy court, the federal district court, and the Ninth Circuit Court of Appeals without success that all superior court orders awarding Clark attorney fees and costs issued

---

releases for payments of about $330,000 to Clark and her attorneys Marcus at the 2020 close of escrow on [Kempton's] San Leandro house; (5) received [excessive]. . .compensation for extraordinary services (in addition to a statutory fee) even though he failed to get independent opinion(s) from expert(s) (e.g. the automatic stay and discharge injunction in Clark's bankruptcy; and charging liens); (6) caused waste, damage, and injury to Estate property; (7) failed to protect Estate property; (8) colluded with Clark's attorneys Marcus (who never proved the validity of their 2007 hourly-fee retainer with a charging lien in the state courts; and who were unsecured creditors of Clark so pre- and post-petition debts owed to them by Clark became discharged debts) as to which probate claims etc would be paid at the 2020 close of escrow on [Kempton's] house; (9) ignored violations of state laws (e.g. void charging lien in attorneys Marcus' 2007 hourly-fee retainer; void cost orders against non-party Kinney; no mutual reciprocity for attorneys fees under 2005 purchase contract after discharge, so Clark couldn't shift fees onto Kinney or [Kempton]; and (10) ignored violations of bankruptcy law (e.g. no 'relief from stay' order; both pre- and post-petition debts owed by Clark were discharged on 8/13/12 because those debts were contemplated as of 12/15/08 onward and based on 2 pre-petition contracts)." (Italics and bolding deleted; grammatical and formatting errors in original.) There is a discussion section in the opening brief, and a corresponding response in the responding brief, for each of these ten arguments. At oral argument, Kinney took the position that he does not seek to appeal issue number three on this list—abandoning that issue in an apparent effort to make it look as if the appeal is narrower that it is as briefed—but he did not disclaim any of the other arguments on the list.

after Clark declared bankruptcy in July 2010 violate bankruptcy law and are void"].)

While the limited interest Kinney has as a small administrative creditor of the Kempton estate does require us to address the propriety of paying his fee to someone else—an issue we address below—we need not treat him as someone with a sufficient stake in the estate to warrant plenary review of the Final Distribution and Allowance of Fees Order, which is what the wide-ranging arguments he presents invite us to do. Because Kinney has not been injured by the vast majority of decisions by the Special Administrator that he now seeks to attack, he has no standing to appeal anything other than the mode of payment of his statutory fee.

To resolve this appeal, we need not revisit Kinney's various "void" judgment arguments, address whether enforcement of judgment liens was a proper mode of collecting judgment debt owed by Kempton or her estate, or delve into whether the Special Administrator properly exercised his discretion in evaluating which of the many liens pending against the San Leandro house should be paid and in what order. What occurred with judgments entered against Kempton alone or against both Kempton and Kinney jointly—and specifically whether any of those judgments may be considered valid debts of Kempton's estate—is not relevant here.[13]

This appeal gives new meaning to the old adage about making a mountain out of a molehill. Kinney does not argue that his statutory fee should have been higher than $1,000. Instead, he attempts to argue that the

---

[13] Equally immaterial are Kinney's various contentions that the Special Administrator charged excess fees, committed waste, failed to secure lien releases on payments to discharge judgment debt, and paid attorney's lien claims that were never proved up.

Special Administrator "reduced" the fee to zero. To begin with, that is factually incorrect. The Special Administrator *allowed* this statutory fee, but paid it to Clark. Kinney's statutory fee having been allowed and paid, he cannot claim to have been adversely affected by the court's confirmation of actions of the Special Administrator (Prob. Code, § 1300, subd. (c)) that have nothing to do with the payment of his fee to Clark.

The main problem for Kinney is one of standing. To establish standing on appeal, Kinney must show that he is a "party aggrieved" by the probate court's rulings. (Code Civ. Proc., § 902; *Estate of Armstrong* (1966) 241 Cal.App.2d 1, 5–6.) An appellant is considered "aggrieved" whose rights or interests are injuriously affected by the judgment under review. With some rare exceptions (e.g., unconstitutional overbreadth, associational standing), courts do not recognize third-party standing in appellate procedure. Someone aggrieved by asserted error on one narrow, discrete issue may not appeal on other issues that only affect the interests of a nonappealing third party. (*Bratcher v. Buckner* (2001) 90 Cal.App.4th 1177, 1184.)

Perhaps Judith K. and her husband, as devisees under Kempton's will, might have had standing to appeal on some of the grounds Kinney attempts to argue, but they declined to do so, which tends to suggest that, on this record, no reasonable attorney would pursue any of the arguments Kinney now makes. It appears to us that, after her removal, Judith K. wisely decided to disassociate herself from Kinney's continuing antics. Kinney cannot now assume the role of appellant on her behalf. (*Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 68 ["concerned mother" of conservatee had no standing to appeal "on behalf of" her conserved son, who was represented by court-appointed counsel and "declined to appeal".)

18

In an apparent effort to elevate his status as a creditor and thus his stake in the estate, Kinney attempts to characterize his November 2017 agreement with Judith K. as a contract for "handyman" services to the estate, and on that premise, he contends the contract was improperly cancelled. The Special Administrator cancelled the November 2017 agreement with Judith K. on the ground that Kinney was not properly licensed to perform property management services, but Kinney now says he did not need a license to perform "handyman" services.

Kinney does not tell us how much he claims to have been owed for his "handyman" services or the extent of any harm he suffered due to the cancellation, but that is neither here nor there because we see no merit in this line of argument anyway. After the Special Administrator cancelled the contract, Kinney filed a lawsuit challenging the cancellation, and under the vexatious litigant statute was denied leave to pursue it. As a result, the case was dismissed; this court affirmed the dismissal, and the judgment is now final.

In this prior lawsuit, Kinney had an opportunity to characterize his November 2017 agreement with Judith K. as a "handyman" contract and challenge its cancellation on the ground he did not need a license to perform maintenance and repair services; he was unable to demonstrate sufficient merit in this or any other argument to warrant allowing the case to proceed. Under the doctrine of claim preclusion, the now-final judgment in that case bars him from relitigating issues pertaining to the cancelled contract in this appeal.[14]

---

[14] At one point, Kinney goes so far as to argue that "[a]ll vexatious litigant decisions against Kinney were based on non-judicial, ministerial, or administrative acts (e.g., labeling him a vexatious litigant without supporting

19

## C.    *Payment of Kinney's Statutory Fee to a Third-Party*

That leaves only the matter of Kinney's $1,000 statutory fee for us to address on the merits.  We see no error on this issue.  Allowance and apportionment of "statutory fees . . . [is] within the discretion of the probate court, whose determination will be upheld on appeal in the absence of manifest abuse of discretion." (*Estate of Heller* (1992) 7 Cal.App.4th 862, 864.)  Similarly, reduction of statutory fees—including denial of fees if the record warrants it—is within the court's discretion.  (Prob. Code, § 12205.)  There was no abuse of discretion here.

As explained in the Final Distribution and Allowance of Fees Order, the probate court found that "Michele R. Clark has properly filed (August 22, 2019) and served the Special Administrator with an abstract of judgment in the amount of $11,150."  The subject of that finding was the 2016 Removal Sanctions Judgment.  The record shows that the 2016 Removal Sanctions Judgment was presented to the Special Administrator, and properly served, which gave Kinney notice and an opportunity to challenge its validity.  The court concluded that "Charles Kinney, attorney for [Judith K.], is allowed the statutory sum out of the estate as the statutory fee to which he is entitled" and that the Special Administrator "shall pay $1,000 to Michele R. Clark pursuant to the judgment lien she has filed against Mr. Kinney."

---

facts) or on judicial decisions in which courts lacked all subject matter jurisdiction (e.g., due to his status as a non-party; due to bankruptcy pre-emption)."  Kinney has already had a full opportunity to appeal the various vexatious litigation orders issued against him.  The judgments entered on those orders long ago became final.  His attempt to relitigate them en masse in this appeal based on a variation of his "void" judgments argument (he tries to cast these orders as "void vexatious litigant orders") is not only barred by the doctrine of claim preclusion, but is a particularly good illustration of the baselessness of this appeal.

20

The 2016 Removal Sanctions Judgment was entered against Kinney alone, and Clark has never taken the position it is a debt of the Kempton estate. The amount of the 2016 Removal Sanctions Judgment was an award for attorney fees incurred by Clark due to Kinney's frivolous litigation activity after her bankruptcy was over. Even if there was some plausibility to any of the bankruptcy-related arguments Kinney now advances in an effort to relitigate issues that have been resolved against him by many courts in the past—we see not a glimmer of merit to any of those arguments—all of these contentions are irrelevant to post-bankruptcy litigation misconduct by Kinney, acting on his own after Kempton died.

In an order filed April 13, 2016, Judge Phillip Gutierrez explained the procedural circumstances that led to entry of the 2016 Removal Sanctions Judgment. According to Judge Gutierrez, "In November 2015, Kinney removed both BC354136 and B265267 to this Court after [Clark and her attorneys] filed motions in state court [in *Kinney v. Cooper*] for attorney's fees and dismissal, respectively. . . . The Court had an extensive history with Kinney prior to these removals. Kinney attempted to remove a related case, *Kempton v. Clark*, BC374938, on three separate occasions, only to be remanded by the Court each time. . . . As part of the third remand, the Court sanctioned Kinney, and later ordered him to pay Clark's attorney's fees relating to the improper removal. . . . On August 11, 2015, the Ninth Circuit affirmed the remand, sanctions, and attorney's fee award. . . . [¶] On February 4, 2016, the Court remanded both actions. . . . Additionally, the Court exercised its discretion to allow [Clark and her attorneys] to file a motion for attorney's fees reasonably incurred from the improper removals." (*Kinney v. Cooper*, *supra*, 2016 U.S.Dist. LEXIS 203959 at p. *2.) A fee

21

motion was then filed and fees were granted against Kinney in the amount of $11,050.

That fee order is incorporated in the 2016 Removal Sanctions Judgment. While Kinney mounts a wide variety of arguments against various other judgments, he says nothing specifically about the 2016 Removal Sanctions Judgment, or at least nothing of any substance. He represents in his brief that he was not served with an abstract of the judgment, but the record shows otherwise. Uncontroverted record evidence supports the probate court's finding that Clark filed and then served Kinney with an abstract of it. The proof of service shows that Kinney was on the service list.

Having been presented with an abstract of judgment showing judgment indebtedness exceeding $1,000 owed by Kinney to Clark, and having been given no legitimate reason to question the validity of that judgment—which arose out of misconduct in federal court long after the Ferndale cases were over and that therefore has nothing to do with Kinney's various theories about attorney fees incurred by Clark before her bankruptcy—the Special Administrator was within his discretion to conclude that Kinney's statutory fee should be paid to Clark in partial satisfaction of his judgment debt to her.[15] Since the probate court had discretion to deny payment of fees outright, it also had discretion to approve payment of such fees to a third-party who was legally entitled to the money in payment of debt owed by Kinney on a judgment lien.

---

[15] To the extent Kinney's generalized complaint about the Special Administrator's failure to secure lien releases specifically concerns the payment of his statutory fee in partial discharge of his debt to Clark under the 2016 Removal Sanctions Judgment, that issue has been forfeited. Nowhere in the record do we see that Kinney asked the Special Administrator to secure a release.

After payment of $329,684.82 in lien indebtedness out of the San Leandro house sale proceeds, Clark was left with a considerable amount of unsatisfied judgment debt, including debt owed to her by Kinney alone. Under the circumstances, the Special Administrator appears to have concluded that Clark was entitled to look to whatever other sources of payment might be available to her, and Kinney's statutory fee was one such source of payment. Given the Special Administrator's finding that he could find no services rendered by Kinney that benefitted the estate, Kinney is probably fortunate no one made a request that he be ordered to disgorge the $20,726.50 in compensation paid to him during Judith K.'s tenure. Instead of paying him more, the Special Administrator determined that Clark "may pursue collection of [her] judgment against [his] earnings for personal services" to the estate, and on that basis, paid Kinney's statutory fee to her as Kinney's creditor.

We see no legal impediment to the probate court's approval of this third-party payment. What the court did was within the range of permissible options available to it in dealing with the issue of Kinney's statutory fee. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957 ["there is no abuse of discretion requiring reversal if there exists a reasonable or fairly debatable justification under the law for the trial court's decision or, alternatively stated, if that decision falls within the permissible range of options set by the applicable legal criteria"].) Whether viewed in substance and effect as a sua sponte order of assignment to a judgment creditor (Code Civ. Proc. § 708.510) or a sua sponte wage garnishment order (Code Civ. Proc. § 706.021), we must presume the probate court had power to order payment to Clark. (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 342–

23

343.) Any irregularity in the procedure it followed in making the order has been waived.

### D. *Sanctions for Pursuit of Frivolous Appeal*

Prior to oral argument in this case, on our own motion we issued an order to show cause (OSC) why this court should not sanction Kinney for filing and pursuing a frivolous appeal. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 645–654; Code Civ. Proc. § 907; Cal. Rules of Court, rule 8.276 (a)(1).) The OSC warned that sanctions may include not only an award of attorney fees and costs to Campbell, but in addition an amount of sanctions payable to the clerk of this court. (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520). Kinney filed a written opposition to the OSC and at oral argument reiterated some of the points made in his opposition.

"An appeal is considered objectively frivolous ' " 'when any reasonable attorney would agree that the appeal is totally and completely without merit.' " ' [Citation.] We look to the merits of the appeal from a reasonable person's perspective. . . . An appeal may be objectively frivolous if there is already a legal authority 'addressing the precise issue. . .raised' [citation], or when appellant's arguments rest on negligible legal foundation [citation]. An appeal is totally devoid of merit where there are 'no unique issues, no facts that are not amenable to easy analysis in terms of existing law, and no reasoned argument by [appellant] for an extension of existing law.' " (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 834–835.)

This standard is met in this case. At oral argument, Kinney claimed he does not, in fact, seek to appeal the Special Administrator's approval of a distribution of $329,684.82 out of the sales proceeds of the San Leandro house to satisfy judgment indebtedness. That assertion is not only belied by his opening brief (see *ante*, fn. 12), but constitutes a misrepresentation to the

24

court that compounds the sanctions problem he faces. Other than his attempt to narrow the scope of his appeal on the fly at oral argument, Kinney's written and oral opposition to the OSC is nothing more than a rehash of the arguments in his main briefs.

Now, to be sure, the issue of paying a third-party judgment lien holder the statutory fee earned by counsel to a probate administrator is unusual and has not been addressed by any published case. And if that issue were the sole basis of the appeal, we may not have entertained a possible sanctions order. Under settled law, however, "[s]anctions for an appeal which is partially frivolous are appropriate if the frivolous claims are a *significant* and *material* part of the appeal." (*Maple Properties v. Harris* (1984) 158 Cal.App.3d 997, 1010, italics in original.) Here, nine out of the ten claims of error presented in the opening brief are frivolous under the *Flaherty* standard. By any measure, these claims comprise "a significant and material part of the appeal." (*Ibid.,* italics omitted) Accordingly, we will order Kinney to pay sanctions for the pursuit of this appeal.[16]

---

[16] We publish this opinion because we believe it is important "to publicly illuminate a particularly egregious example of an abuse of the legal system and to bring to the attention of other courts, who may find themselves similarly burdened by litigation initiated by this same party." (*Kim v. Walker* (1989) 208 Cal.App.3d 375, 386, fn. 10.) Borrowing some apt language from *Kim*, "our resolution of [this case] . . . appears to be only a small part of the extensive litigation which [Kinney] has commenced" (*ibid.*) and seems inclined to continue to pursue whenever the opportunity arises. The rarity of the set of circumstances presented and the type of misconduct involved meet the standards set forth in subdivisions (c)(2) ["Applies an existing rule of law to a set of facts significantly different from those stated in published opinions"] and (c)(6) ["Involves a legal issue of continuing public interest"] of rule 8.1105 of the California Rules of Court.

## IV. DISPOSITION

The Final Distribution and Allowance of Fees Order is affirmed.  The clerk of this court is ordered to forward a copy of this opinion to the State Bar upon return of the remittitur (Bus. & Prof. Code, §§ 6086.7, subd. (a), 6068, subd. (o)(3)) and in that referral to bring to the State Bar's attention footnote 2 of this opinion.  The case is remanded to the probate court, where, upon satisfactory proof from the Special Administrator of the amount of reasonable attorney's fees and costs incurred to respond to the frivolous portions of the appeal, the court shall award sanctions against Kinney payable to the Special Administrator.  In addition, the sanctions order shall include a sanctions amount of $5,000 payable to the Clerk of this court.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

Trial Court: Superior Court of California, County of Alameda

Trial Judge: Hon. Sandra K. Bean

Counsel: Charles Kinney, in pro. per., for Appellant.

Phillip Campbell, in pro. per., for Respondent.